**\*\* NOT FOR PUBLICATION \*\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————
                            :

DIANA FIDANZATO,                 :

                            :

             *Pro Se* Plaintiff,     : Civil Action No. 11-5132(FLW)

                            :

      v.                     :        **OPINION**

                            :

SOMERSET, HUNTERDON, AND   :

WARREN COUNTIES VICINAGE 13  :

JOHN DOES 1-5 AND JIM DOES CORP :

1-5, *et al.*,                :

                            :

             Defendants.     :

                            :

———————————————————:

**<u>WOLFSON, United States District Judge:</u>**

The instant case arises out of *pro Se* Plaintiff Diana Fidanzato's ("Plaintiff") divorce proceedings with her former husband, Michael Fidanzato. Displeased with the outcome of those proceedings, Plaintiff brings this suit against the state judges, who presided over her various proceedings, along with court administrations, as well as Mr. Fidanzato and the prior law firm, including the attorneys, who represented Mr. Fidanzato in the divorce proceedings, for alleged violations of various state and federal laws under numerous legal theories. The State Defendants[1] collectively filed their motion to dismiss

---

[1] These defendants include: Superior Court of New Jersey, Appellate Division; Superior Court of New Jersey, Somerset/Hunterdon/Warren Vicinage; Somerset/Hunterdon/ Warren Vicinage, Family Division; Somerset/Hunterdon/ Warren Vicinage, Probation Division; Administrative Office of the Courts; Hon. Glenn A. Grant, J.A.D.; Hon. Jane Grall, J.A.D.; Hon. Laura M. LeWinn (ret.); Hon. Yolanda Ciccone, A.J.S.C.; Hon. Julie M. Marion, P.J. Fam.; and Hon. Thomas H. Dilts (ret.). Collectively, these defendants will hereinafter be referred to as the "State Defendants."

pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Additionally, defendants, Law Offices of William P. Deni, Sr., Esq., William P. Deni, Sr., Esq. and Georgia M. Fraser, Esq. (collectively, the "Firm Defendants"), move for dismissal of the claims against them. Upon reviewing the State and the Firm Defendants' motions to dismiss, the Court finds that Plaintiff has failed to state a claim, and thus, for the reasons set forth below, both motions to dismiss are **GRANTED**.[2]

## I.    BACKGROUND

### A.    Facts Pertaining to the State Defendants

Before recounting the relevant facts, which are derived from the Complaint and taken as true, the Court notes that Plaintiff's Complaint, in whole, reads much like separate statements of legal conclusions rather than allegations of facts in support of Plaintiff's case.  Based on what the Court can glean, it appears that a Final Judgment of Divorce Order and a Property Settlement Agreement were entered in the Superior Court of New Jersey, Law Division, Family Part, on August 6, 2001 and July 24, 2001, respectively. Pl.'s Compl., ¶ 1. Court proceedings resulting from Plaintiff's divorce still continue to this day in State Court.  *Id*. at ¶ 2.

In the first stance, Plaintiff alleges that she has been hearing impaired since 1979 and was diagnosed as hearing impaired in 1996. *Id*. at ¶¶ 17-18. Based on that

---

[2]    After the Court's dismissal of the State and Firm Defendants, the only remaining defendant is Mr. Fidanzato.  While Plaintiff has served Mr. Fidanzato, Mr. Fidanzato has not answered.  For the reasons set forth extensively below, it does not appear that Plaintiff's federal causes of action against Mr. Fidanzato would survive, i.e., Americans with Disabilities Act and § 1983.  Should the Court dismiss those federal claims, the remainder of Plaintiff's state law claims would also be dismissed as the Court would decline to exercise supplement jurisdiction. *See Wall v. Dauphin County*, 167 Fed. Appx. 309, 313 (3d Cir. 2006).  In that regard, within ten days from the date of the Order accompanying this Opinion, Plaintiff is directed to inform the Court of her intentions with respect to her claims against Mr. Fidanzato.

impairment, Plaintiff asserts that she required hearing devices during court proceedings both at the state trial and appellate levels. *Id*. at ¶ 18. In particular, Plaintiff claims that before oral argument for the appeal of the family court matter, she requested an audio hearing device both orally and via facsimile. *Id*. at ¶¶ 19-20. However, Plaintiff alleges that she was not provided a hearing device for the proceeding by the appeals court. *Id*. at ¶ 23. Plaintiff asserts that because she could not hear at that hearing, she was unable to adequately respond to any inquires. *Id*. at ¶ 30.  As a result of this alleged lack of accommodations from the court, Plaintiff claims that the State Defendants violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, Title II, and applicable state disability laws. *Id*. at ¶ 28. In addition, Plaintiff asserts various state tort claims against the State Defendants.   Specifically, without any support, Plaintiff asserts that the State Defendants (1) violated the New Jersey Law Against Discrimination ("NJLAD"); (2) committed abuse of process; (3) harassed Plaintiff; (4) negligently and intentionally inflicted emotional distress; and (5) committed slander and slander *per se*.  *See Id.* at ¶¶ 126, 131, 135, 139, 143, 147, 151.  Moreover, Plaintiff alleges that the State Defendants conspired to violate the frivolous litigation statute and to commit abuse of process, harassment and intentional infliction of emotional distress.  *See Id.* at ¶¶ 156, 160, 164, 168.[3]

---

[3]      Apparently, according to defendants, this is not the first time Plaintiff has attempted to bring these claims against them.  By way of complaint dated October 3, 2007, filed with the New Jersey Superior Court, Plaintiff alleged virtually identical violations of her rights as contained in her current Complaint before this Court.  That complaint, unsurprisingly, was dismissed against all defendants by the State Court.  It appears that Plaintiff, disappointed with the State Courts' decisions against her, attempts to rehash her meritless claims here.

Unrelated to her disabilities claims, Plaintiff also lists – albeit in a conclusory fashion – numerous "infractions" which Plaintiff claims that the State defendants have collectively committed.  In sum, Plaintiff alleges that the State Defendants entered orders outside of their jurisdiction and without legal basis, terminated child support and wrongfully collected child support from her child support account, collected sanctions from her child support account, failed to provide necessary legal documents to her, engaged in dishonesty, deceit or misrepresentation and engaged in misconduct.  *See Id.* at ¶¶ 45-46, 65.   Furthermore, Plaintiff goes on to allege that the State Defendants violated the Rules of Professional Conduct and the New Jersey Court Rules, engaged in an extortion scheme and took property from Plaintiff, created a false record, made threats against Plaintiff and  committed numerous instances of criminal and civil fraud.  *See Id.* at ¶¶ 80, 82-83, 85, 94.   Because of these violations, according to Plaintiff, she and her child have been deprived of their rights under due process.  Plaintiff demands damages in the amount of $40,000.00, compensatory damages, consequential damages, punitive damages and pre- and post-judgment costs and interests.  *See Id.* at p. 79, Prayer for Relief.   In addition to money damages, Plaintiff seeks injunctive relief to enjoin the alleged violations of the ADA.  *Id.*  Plaintiff also demands injunctive relief in the form of vacation of State Courts' Orders from November 20, 2009 to the present, the halting of her child support payments to her ex-husband, and the issuance of orders demanding that the State Defendants allow a "separate agency to handle customer disputes for child support, child support enforcement and court orders."  *Id.*

**B.      Facts Pertaining to the Firm Defendants**

Plaintiff's factual allegations against the Firm Defendants are even less specific and cursory.  While little or no facts regarding the state court proceedings -- a crucial aspect of Plaintiff's Complaint – were included in Plaintiff's Complaint, a summary of those proceedings is important to understand the nature of Plaintiff's claims.  The Firm Defendants were retained by Mr. Fidanzato in 2009 to represent him in his divorce proceedings with Plaintiff.  According to the Firm Defendants, Plaintiff was a vexatious litigator in her divorce proceedings.[4]  In particular, after Plaintiff's divorce was finalized, Plaintiff continued to file motions in state court resulting in a total of thirty-two motion hearings.  Importantly, the Firm Defendants point out that the State Court noted in one of its opinions, in strongly worded language, that all future motions filed in state court by Plaintiff would not be scheduled and that no response would be due by Mr. Fidanzato.  Needless to say, the Firm Defendants and Mr. Fidanzato were embroiled in the state court litigation as a result of Plaintiff's habitual filing of motions and appeals.

By the tone of Plaintiff's accusations in her Complaint and the Firm Defendants' recitation of the torturous procedural history of the state court proceedings, the relationship between Plaintiff and the Firm Defendants is indeed strained.  Prior to this case, Plaintiff has continually accused the Firm Defendants of, *inter alia*, violating ethics guidelines and fraud.  Theses prior baseless allegations – which have all been dismissed by state court -- have now made their way into the Complaint in this case.  The Court will not repeat all of Plaintiff's duplicitous allegations in this Opinion.

---

[4]     Independently, the Court has also reviewed the orders and opinions executed by various state courts related to Plaintiff's divorce proceedings.   In that regard, the Court will take judicial notice of the existence of these court documents.

The gist of Plaintiff's complaints is that the Firm Defendants failed to follow the rules of the court and court laws, and that the Firm Defendants failed to take any corrective actions after Plaintiff sent them cease-and-desist letters.  Plaintiff gripes that that the Firm Defendants filed papers with the state courts "for the sole purpose to harass, intimidate and financially destroy" plaintiff.  *Id.* at ¶ 49.  In addition, without any specifics, Plaintiff alleges that the Firm Defendants "fail[ed] to disclose a material fact to the tribunal when disclosure is necessary to avoid assisting an illegal, criminal or fraudulent fact by the client," and as a result, these defendants were dishonest, fraudulent and deceitful.  *Id.* at ¶ 63.  Plaintiff goes further to accuse – again without any specifics -- the Firm Defendants of creating a false record in order to extort property from Plaintiff. Based on these actions, Plaintiff believes that her and her children's rights have been violated and as such, she is entitled to relief.

C.      **The Complaint**

In Plaintiff's Complaint, each of the sixteen causes of action is asserted against all defendants, albeit there is no factual support for any of the asserted claims.  Plaintiff alleges that all defendants (1) violated the frivolous litigation statute, N.J.S.A. 2A:15-59 *et seq.*; (2) committed abuse of process; (3) harassed her; (4) committed negligent infliction of emotional distress; (5) intentionally inflicted emotional distress upon Plaintiff; (6) slandered her; (7) committed slander per se; (8) conspired to violate the frivolous litigation statute; (9) conspired to commit abuse of process; (10) conspired to commit harassment; (11) conspired to commit intentional infliction of emotional distress; (12) committed fraud; (13) committed negligence; (14) violated her civil rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"), Title II,

6

and 42 U.S.C. §1983; (15) committed misconduct in violation of her civil rights, including New Jersey's law against discrimination ("NJLAD"); and (16) committed fraud and misconduct, as well as engaged in unethical activities, deceptive conduct, criminal conduct, criminal acts, and mail fraud in violation of her civil rights, including, 18 U.S.C. 1341.[5]

In the instant matters, the State and Firm Defendants move separately to dismiss Plaintiff's claims against them.  Plaintiff opposes the motions by filing a response that reads much like her Complaint.  In that response, Plaintiff advises the Court that she would be seeking legal representation.  However, to date, no attorney has entered an appearance on behalf of Plaintiff.

## II.    STANDARDS OF REVIEW

### A.  Standard of Review

#### 1.  Subject Matter Jurisdiction

The State Defendants' assertion of Eleventh Amendment's sovereign immunity is a challenge to this Court's subject matter jurisdiction. *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 694 (3d Cir.1996) ("Eleventh Amendment is a jurisdiction bar which deprives federal courts of subject matter jurisdiction."); *Slinger v. N.J.,* No. 07–5561, 2008 WL 4126181, at *2 (D.N.J. Sept.4, 2008).

When jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. *Kehr Packages, Inc.*

---

[5]     To the extent Plaintiff's mail fraud claim is premised upon 18 U.S.C. 1341, which is a criminal statute, that cause of action has no merit since Plaintiff does not have a private right of action under that statutory provision.  *Jones v. TD Bank*, 468 Fed. Appx. 93, 94 (3d Cir. 2012).  In that regard, because Plaintiff does not otherwise specify another statute under which she is pursuing her "mail fraud" claim, the Court will construe such a claim as state common law fraud.

*v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991). In considering a motion pursuant to Rule 12(b)(1), the district court must distinguish between factual and facial challenges to subject matter jurisdiction. Where a defendant contends that the plaintiff's complaint did not properly plead jurisdiction, the court need not consider extrinsic documents, and must "consider the allegations of the complaint and documents referenced therein and attached in the light most favorable to the plaintiff." *Gould Electronics, Inc. v. U.S.,* 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Federal Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). Thus, "[w]here an attack on jurisdiction implicates the merits of plaintiff's federal cause of action, the district court's role in judging the facts may be more limited." *Martinez v. U.S. Post Office,* 875 F.Supp. 1067, 1090 (D.N.J. 1995) (citing *Mortensen,* 549 F.2d at 891).

Should factual issues arise regarding subject matter jurisdiction, the court may consider exhibits outside the pleadings. *Mortensen,* 549 F.2d at 891. Indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* No presumption of truthfulness attaches to the allegations of the complaint insofar as they concern subject matter jurisdiction. *Mortensen,* 549 F.2d at 891. "When resolving a factual challenge, the court may consult materials outside the pleadings, and the burden of proving jurisdiction rests with the plaintiff." *Medical Society of N.J. v. Herr,* 191 F.Supp.2d 574, 578 (D.N.J. 2002) (citing *Gould,* 220 F.3d at 176).

### 2.  Rule 12(b)(6) Standard

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be

entitled to relief." *Phillips,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 561 (*quoting Conley,* 355 U.S. at 45–46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest 'the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element.'" *Phillips,* 515 F.3d at 234 (*quoting Twombly,* 550 U.S. at 556).

In affirming that *Twombly* standards apply to all motions to dismiss, the Supreme Court recently explained the principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009); *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir. 2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Ultimately, "a complaint

must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler,* 578 F.3d at 211.

The Third Circuit recently reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *West Penn Allegheny Health System, Inc. v. UPMC,* 627 F.3d 85, 98 (3d Cir. 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." *Id.* That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." *Id.* (*quoting Iqbal,* 129 S.Ct. at 1953).

## III.   DISCUSSION

### A.  The State Defendants

#### 1.  Sovereign Immunity

There are various preclusion and immunity doctrines that would bar Plaintiff's claims.  The most fundamental of which is the Eleventh Amendment's sovereign immunity.  The State Defendants correctly contend that this type of immunity bars all of Plaintiff's claims against them, except for claims asserted pursuant to the ADA.  Because an assertion of immunity under the Eleventh Amendment is a facial attack on this Court's subject matter jurisdiction, the Court will only consider Plaintiff's Complaint and any documents relied upon and attached thereto.  Before the Court begins the analysis, aside from Plaintiff's ADA claim, Plaintiff's claims can be separated into two categories: federal causes of action pursuant to 42 U.S.C. § 1983 and Title II, and state law based tort

claims, including violations of the frivolous litigation statute, N.J.S.A. 2A:15-59.[6] *See, supra* (Counts One – Thirteen, Fifteen and Sixteen); *Segal v. Lynch*, 413 N.J. Super. 171, 195 (App. Div. 2010).

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The amendment precludes federal jurisdiction over a state absent the state's consent to suit. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99 (1984). The immunity from suit extends to agencies, departments and officials of the state when the state is the real, substantial party in interest. *Id.* at 101–02; *Alabama v. Pugh,* 438 U.S. 781 (1978).

Sovereign immunity applies even if the state is not a named party to the action, "'as long as the state is the real party in interest.'" *Carter v. City of Philadelphia,* 181 F.3d 339, 347 (3d Cir. 1999) (*quoting Fitchik v. New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655, 659 (3d Cir. 1989). Thus, a plaintiff may not evade or circumvent a defendant's assertion of sovereign immunity by purposefully omitting the state as a formal party to a complaint. *Chisolm v. McManimon,* 275 F.3d 315, 322–23 (3d Cir. 2001). In *Fitchik,* the Third Circuit explained that the state is a party-in-interest when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the

---

[6]     With respect to Plaintiff's claim under Title II, Plaintiff does not specify which federal act she intends to pursue.  This lack of clarity does not meet the pleading requirements, and therefore, the Court dismisses any claims Plaintiff raises under Title II. Even if this claim were viable, the State Defendants would be immunized by the Eleventh Amendment for the reasons set forth later in this Opinion.  *See*, *infra*.

Government from acting or to compel it to act." 873 F.2d at 659. In other words, sovereign immunity is appropriate if the named defendant is an "arm of the state." *Davis v. Lakewood,* No. 03–1025, 2005 WL 1863665, at *3 (D.N.J. Aug. 4, 2005) (*citing Chisolm,* 275 F.3d at 323).

The *Fitchick* court also set forth a three-factor test when determining whether a defendant is an "arm of the state" entitled to sovereign immunity.  These factors include: "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy." *Fitchik,* 873 F.2d at 659; *see also College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 948 F.Supp. 400, 4009 (D.N.J. 1996) (precluding suit where "'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration.'") (internal citation omitted). In applying this three-factor test, the Third Circuit noted that not all three factors are to be given equal weight; rather, the first inquiry -- whether any judgment would be paid from the state treasury -- is the most important question and generally proves dispositive. *Fitchik,* 873 F.2d 659; *Febres v. Camden Bd. Of Educ.,* 445 F.3d 227, 229 (3d Cir. 2006); *Davis,* 2005 WL 1863665, at *3.

In particular, under the *Fitchik* test, it is well-established that "state courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and therefore considered "arms" of the state." *Dongon v. Banar*, 363 Fed. Appx. 153, 156 (3d Cir. 2010) (*citing Johnson v. New Jersey*, 869 F. Supp. 289, 298 (D.N.J. 2001).  Here, considering that the State Defendants – including court administrations and judicial

officers -- are all judicial in nature, they are considered an "arm" of the State of New Jersey for the purposes of Eleventh Amendment immunity. *See Id.*

However, "[a] State's immunity from suit is not absolute." *Lombardo v. Pennsylvania,* 540 F.3d 190, 195 (3d Cir. 2008). "[T]here are only three narrowly circumscribed exceptions to Eleventh Amendment immunity (1) abrogation by Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law." *M.A. ex rel. E.S. v. State–Operated Sch. Dist.,* 344 F.3d 335, 345 (3d Cir. 2003) (*citing MCI Telecomms. Corp. v. Bell Atlantic–Pennsylvania Serv.,* 271 F.3d 491, 503 (3d Cir. 2001), *cert. denied,* 537 U.S. 941 (2002).

As to the first exception, it is clear that there is no Congressional abrogation of New Jersey's immunity under the state tort claims or its immunity under 42 U.S.C. §§ 1983 or 1985. *See Quern v. Jordan,* 440 U.S. 332, 340–41 (1979); *Seeney v. Kavitski,* 866 F. Supp. 206, 209 (E.D. Pa. 1994). Similarly, as to the second scenario, while there are some narrowly-defined exceptions which do not apply here, New Jersey has not unequivocally waived its sovereign immunity by enacting the New Jersey Tort Claims Act. *See Penny v. Borough of Wildwood Crest*, 28 Fed. Appx. 137, 138 (3d Cir. 2002); N.J.S.A. 59:1-14. Regarding Plaintiff's claims under NJLAD, "[t]he State has not explicitly waived Eleventh Amendment immunity for claims brought in federal court under the NJLAD." *Bennett v. City of Atl. City,* 288 F.Supp.2d 675, 683 (D.N.J.2003) (citing N.J .S.A. § 10:5-12(a)). Indeed, "New Jersey has not stated 'by the most express language' that it is open to private suits under the NJLAD in federal court." *Garcia v. Richard Stockton Coll.,* 210 F.Supp.2d 545, 550 (D.N.J

13

.2002) (citing N.J.S.A. §§ 10:5-5(e), 10:5-13).   Finally, the State of New Jersey has not waived its sovereign immunity with respect to § 1983 claims in federal court.  *Mierzwa v. United States*, 282 Fed. Appx. 973, 976 (3d Cir. 2008).

With respect to the last exception, each of the individual state defendants was sued for violations that allegedly occurred when he or she was acting in his or her official capacity. While Plaintiff has brought claims against each of the state judicial defendants both individually and in his or her official capacity, it is clear that Plaintiff' has not pled any claims against these defendants in their individual capacity. In analyzing liability under § 1983, "[o]bviously state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71 (citations omitted).[7]  Accordingly, none of the exceptions of sovereign immunity is present in this case.

In sum, Congress has not abrogated immunity in this instance, nor has New Jersey otherwise waived its immunity to either the federal or state law claims asserted by Plaintiff.  Therefore, insofar as Plaintiff's claims against the State Defendants do not concern the ADA, this Court lacks subject matter jurisdiction to hear such claims as they are barred by Eleventh Amendment.

### 2.  Americans with Disabilities Act

---

[7]   Moreover, because all of Plaintiffs' claims, including her ADA claim, against the individual judicial officers and administrators relate to those defendants' actions in their official capacity, those claims are barred by the doctrines of judicial immunity and *qusai*-judicial immunity.  *See Dongon*, 363 Fed. Appx. at 156 ("any actions taken by those charged with the responsibility of carrying out a court's order would be barred by the doctrine of absolute quasi-judicial immunity"); *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983) ("judges are entitled to absolute immunity from liability based on actions taken in their official judicial capacity").

With regards to Plaintiff's claims against the individual state judicial defendants, i.e., judges and court administrators, under Title II of the ADA (public entities), the State Defendants argue that such claims must be dismissed because Title II of the ADA does not provide for individual liability. This Court agrees.

"Title II of the ADA validly abrogates state sovereign immunity insofar as it creates a private cause of action for damages against *the States* for conduct that actually violates the Fourteenth Amendment." *United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877 (2006) (emphasis added). However, as noted earlier, it is clear that Plaintiff has lodged her claims specifically at individual state judicial defendants -- in their official capacity -- in this matter. Plaintiff claims that she is hearing impaired, that no hearing devices were provided to her at her Appellate Division oral argument, that the State Judicial Defendants knew that she was hearing impaired, and that as a result of their alleged failure to provide her with a hearing aid, she "could not hear" and thus could not "adequately respond at [the] hearing." Pl.'s Br. ¶¶ 6-8. As a result, she claims that, among other things, the individual state defendants violated Title II of the ADA.  However, individuals, sued in their official capacities, are not "public entities" under the ADA and are not subject to liability thereunder. *See Emerson v. Thiel College,* 296 F.3d 184, 189 (3d Cir. 2002) (suggesting in dicta that "individuals [sued in their official capacities] are not liable under Titles I and II of the ADA"); *Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001).[8]  Therefore, to the extent that Plaintiff's claims under Title II of the ADA are asserted against the individual state judicial defendants, those

---

[8]      Numerous circuits and district courts have found that individuals sued in their official capacities are not subject to liability under Title II of the ADA.  *See, e.g., Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001).

claims are dismissed.  *See Mutschler v. SCI Albion Chief Health Care Adminstrator,* No. 09-265, 2010 U.S. Dist. LEXIS 100433, at *15 (W.D. Pa. Sep. 23, 2010).

Likewise, Plaintiff's ADA claims against the various state public entities, i.e, Superior and Appellate courts, are also dismissed for failure to state a claim.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subject to discrimination by any such entity." 42 U.S.C. § 12132.  Under that statutory scheme, a plaintiff is required to allege the following elements: (1) she is a qualified individual with a disability within the meaning of the statute; (2) she is being excluded from participation in, or is being denied the benefits of the services, programs, or activities of a covered entity, or is otherwise being discriminated against by the entity; and (3) such exclusion, denial of benefits, or discrimination is due to the plaintiff's disability. *Bowers v. National Collegiate Athletic Association*, 475 F.3d 524 (3d Cir. 2007); *Cornell Companies, Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 262-63 (E.D. Pa. 2007) (citations omitted).

Here, Plaintiff clearly has not pled sufficiently her *prima facie* case.  Indeed, by merely asserting that she is "hearing impaired," Plaintiff's assertion of disability is conclusory.  *See Wahl v. Wecht*, No. 10-0010, 2010 U.S. Dist. LEXIS 99363, at *24-25 (W.D. Pa. Sep. 21, 2010).  Rather, as noted above, Plaintiff must allege that she is a "qualified individual" with a disability within the definition of the ADA.   In that connection, Plaintiff's allegations regarding her disability must include "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(B); *see Williams v. Phila. Hous.*

*Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004); *Weidow v. Scranton Sch. Dist.*, 2009 U.S. Dist. LEXIS 73622, *14 (M.D. Pa. Aug. 19, 2009).  Plaintiff simply states that she is hearing impaired; she does not allege any facts regarding the extent of her impairment and how her impairment limits her life activities.  Without those allegations, Plaintiff has not met her pleading requirement under the first element of her ADA claim. Moreover, Plaintiff simply does not allege the third element – that the failure of receiving a hearing aid was the result of discrimination on the part of the State Defendants.  *See Bowers*, 475 F.3d at 553.  Plaintiff simply avers that she did not receive a hearing aid and therefore, the State Defendants violated the ADA.  Those allegations are not sufficient. Accordingly, Plaintiff's ADA claims against all of the state public entities are dismissed without prejudice.   However, Plaintiff's ADA claims against the individual state defendants are dismissed with prejudice.

### B.  The Firm Defendants

The Firm Defendants contend that Plaintiff's claims against them should be dismissed for failure to state a claim.  The Court is mindful that the sufficiency of this *pro se* Plaintiff's pleading must be construed liberally in favor of Plaintiff, even after *Iqbal. See Erickson v. Pardus,* 551 U.S. 89 (2007).  However, when construing Plaintiff's Complaint liberally, it is clear that Plaintiff's claims against the Firm Defendants do not meet the *Iqbal* standard.  The Court shall examine each of Plaintiff's causes of action against the Firm Defendants below.

#### 1.  Count 1: Violations of Frivolous Litigation Statute

Plaintiff claims that the Firm Defendants violated N.J.S.A. 2A:15-59, otherwise known as the Frivolous Claims Act ("NJFCA"), by filing frivolous motions in her state

court divorce proceedings. The Firm Defendants assert that since Plaintiff did not meet the procedural requirements of New Jersey Court Rule 1:4-8, Plaintiff's NJFCA claim must be dismissed. The Court agrees.

Under the NJFCA, "[a] party ... seeking an award under this section shall make application to the court which heard the matter. The application shall be supported by an affidavit." N.J.S.A 2A:15–59.1. The legislative statement accompanying the NJFCA provides clarity as to the statute's purpose, which is to "[p]ermit the recovery of attorney's fees in a civil suit when the legal position of [a] non-prevailing party was not justified." *Id.* To recover attorney's fees under the NJFCA, the statute provides that a party cannot file its request for relief in a counterclaim. *See Mruz v. Caring, Inc.,* 39 F.Supp.2d 495, 507 (D.N.J.1999), *abrogated on other grounds, U.S. Express Lines Ltd. V. Higgins,* 281 F.3d 383 (3rd Cir.2002) ("Applying a similar interpretation to the term 'application,' surely, if the New Jersey Legislature intended for a party to be able to recover attorneys' fees under the NJFCA by counterclaim, the legislature would have said as much in the text of the statute.").

Instead, a party wishing to avail itself of the NJFCA must proceed by way of motion. *Evans v. Prudential Property and Casualty Insurance Co.,* 233 N.J.Super. 652, 663–64 (Law Div.1988)("The avenue to be followed is that of a motion."); *In re Kraeger,* No. 99–0026, 1999 WL 342762, at *6 (Bankr. E.D. Pa. May 24, 1999) ("Based on the language of this statute, relief cannot be sought thereunder by means of a counterclaim.").  Furthermore, New Jersey Court Rules provide that "[n]o such motion shall be filed unless it includes a certification that the applicant served written notice and

18

demand pursuant to R. 1:5-2 to the attorney or pro se party who signed or filed the paper object to." N.J. Ct. R. 1:4-8(b)(1).

Here, Plaintiff asserts her petition for fees and costs under the NJFCA as part of her Complaint, not as a motion as required by the statute. In addition, Plaintiff has not pled or otherwise indicated that she properly served written notice or demand on the Firm Defendants. Accordingly, Plaintiff has not complied with the procedural rules.

Even if Plaintiff had proceeded properly -- that is, by way of motion with proper service and notice -- Plaintiff's frivolous litigation claim under the NJFCA would be premature, as she cannot establish that she is the prevailing party in this matter -- or any other matters. *See Venuto v. Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart, P.C.,* 11 F.3d 385, 392 (3d Cir.1993) ("The Frivolous Claims Act authorizes a winning party, including a defendant, to recover the costs of litigation and attorneys' fees when it has been made a party to a frivolous claim."); *Chernin v. Mardan Corp.,* 244 N.J.Super. 379, 381–82 (Ch. Div. 1990); *First Atlantic Federal Credit Union v. Perez,* 391 N.J.Super. 419, 432 (App. Div. 2007) ("To successfully invoke N.J.S.A. 2A:15–59.1, a party must 'prevail.'"). Thus, because Plaintiff failed to follow the procedural requirements of the statute, and because she has not pled she was a prevailing party, Plaintiff's NJFCA claim is dismissed.

### 2. Count 2: Abuse of Process

Plaintiff next claims that Firm Defendants committed abuse of process by filing numerous motions for the sole purpose of intimidating and harassing her. In response, the Firm Defendants retort that any motion or application filed in state court was within the letter of the law, or merely as a response to Plaintiff's vexatious motion practice in

order to avoid a default judgment from being entered. The Court finds that because Plaintiff has not pled an ulterior motivation behind these filings by the Firm Defendant, her claim must be dismissed.

To properly plead the tort of abuse of process, a party must allege sufficiently these elements: (1) ulterior motive; and (2) "further act after the issuance of process representing the perversion of the legitimate use of the process." See Tare v. Bank of Am., No. 07-583, 2009 U.S. Dist. LEXIS 23125, at *18 (D.N.J. Mar. 24, 2009) (citing Simone v. Golden Nugget Hotel & Casino, 844 F.2d 1031, 1036-37 (3d Cir. 1988)). Here, Plaintiff cannot and does not point to a single motion or response filed by the Firm Defendants that served no legitimate legal purpose.  Indeed, Plaintiff pleads no factual support whatsoever for her theory that the Firm Defendants filed motions for ulterior, harmful reasons.  Other than her conclusory and inflammatory allegations of wrongdoing, Plaintiff has not pled sufficiently the elements of abuse of process.  Thus, the abuse of process claim is dismissed.

### 3.  Count 3: Harassment

Plaintiff alleges that the Firm Defendants harassed Plaintiff by filing certain motions in state court.  The Firm Defendants argue that none of their communications with Plaintiff or otherwise amount to a violation of N.J.S.A. § 2C:33-4.

The harassment provision of N.J.S.A. 2C:33-4 provides that:

"...a person commits a petty disorderly persons offense if, with purpose to harass another, he:

a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

A communication under subsection a. may be deemed to have been made either at the place where it originated or at the place where it was received."

N.J.S.A. 2C:33-4.

Here, Plaintiff does not plead a single communication where the Firm Defendants' actions or words could be construed as harassment under the aforementioned elements.  Nor does Plaintiff point to any other behaviors by those defendants that could rise to the level of offensive touching, kicking or alarming conduct. Plaintiff simply asserts that all of communications made by the Firm Defendants were meant to harass her.  Again, these averments are made with no factual support whatsoever.  Thus, Plaintiff's harassment claim is dismissed.

### 4.   Count 4: Negligent Infliction of Emotional Distress

Next, Plaintiff alleges that the Firm Defendants negligently inflicted emotional distress upon her by filing numerous motions and committing other conduct in state court.   Plaintiff has not met the pleading requirements for negligent infliction of emotional distress.    Indeed, as the New Jersey Supreme Court summarized in *Jablonowska v. Suther*, 195 N.J. 91 (2008), an individual in New Jersey can maintain an independent tort action for negligent infliction of emotional distress in two instances: "A plaintiff can demonstrate that the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury, which gave rise to emotional distress that resulted in a substantial bodily injury or sickness." *Id.* at 104.  Alternatively, a plaintiff can state a *prima facie* claim for negligent infliction of emotional distress by satisfying

21

the four elements set forth in *Portee v. Jaffee,* 84 N.J. 88 (1980).  The latter scenario is not applicable in this case as it involves bystander liability.

Here, most fundamentally, Plaintiff does not allege that her emotional distress resulted in a substantial bodily injury or sickness as a consequence of Defendants' filings or other conduct, and therefore, this claim is dismissed.

### 5.  Count 5: Intentional Infliction of Emotional Distress

Without any credible allegations, Plaintiff accuses the Firm Defendants of intentionally inflicting emotional distress upon her.  Under New Jersey law, to prevail on a common law cause of action for intentional infliction of emotional distress, "[t]he plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Saving Fund Soc'y,* 111 N.J. 355, 366 (1988). Generally, for the conduct to be actionable, "the emotional distress ... must be 'so severe that no reasonable [person] could be expected to endure it.' " *Id.* at 366–67 (*quoting Restatement (Second) of Torts* § 46 comment j at 77 (1965)). Because the severity of a claim for emotional distress raises questions both of law and fact, the court "decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved." *Id.* at 367.

Here, Plaintiff alleges that the Firm Defendants' conduct in state court, including filing motions and papers, constitute outrageous conduct.  The Court has not found any case law that supports the preposterous notion that filing of court documents by counsel is both extreme and outrageous in the context of intentional infliction of emotional distress.  Accordingly, this claim is likewise dismissed.

### 6.   Counts 6 and 7: Slander and Slander Per Se

Plaintiff asserts claims of slander and slander per se against Defendants for allegedly communicating false and defamatory statements of facts.  The Firm Defendants correctly respond that these claims should be dismissed because, although a verbatim transcription of defamatory language is not required, a plaintiff must specify the defamatory words and the meaning he or she attaches to them.  Here, as Plaintiff has not done such in her pleadings, her slander and slander per se claims fail to state a claim.

"Defamation imposes liability for publication of false statements that injure the reputation of another." *Printing Mart—Morristown v. Sharp Elecs. Corp.,* 116 N.J. 739, 765 (1989) (citing *Maressa v. N.J. Monthly,* 89 N.J. 176, 190 (1982)). "In order to establish a prima facie case of defamation ... a plaintiff must show that defendant communicated to a third person a false statement about plaintiff that tended to harm [the] plaintiff's reputation in the eyes of the community or to cause others to avoid plaintiff." *W.J.A. v. DA.,* 416 N.J.Super. 380, 384–85 (App. Div. 2010) (quoting *McLaughlin v. Rosanio,* 331 N.J.Super. 303, 312 (App. Div. 2000)). As the New Jersey Supreme Court has explained, the threshold issue in any defamation case is whether the statement at issue is reasonably susceptible of a defamatory meaning. *Decker v. Princeton Packet, Inc.,* 116 N.J. 418 (1989); *see Romaine v. Kallinger,* 109 N.J. 282, 290 (1988).

In the present case, throughout Plaintiff's Complaint, she only made vague assertions that the Firm Defendants committed slander and made defamatory statements about her.  Not once did Plaintiff explain which statements she alleges were slanderous. More importantly, Plaintiff failed to allege any specific harm she suffered from these alleged slanderous statements, *e.g.*, reputation.  *See McLaughlin v. Rosanio, Bailets &*

23

*Talamo, Inc.*, 331 N.J. Super. 303, 320 (App. Div. 2000).  Because of these deficiencies, Plaintiff has failed to properly plead a claim for slander under New Jersey law.

Furthermore, the Court's reasoning with respect to Plaintiff's claim for slander equally applies to her slander per se claim. In New Jersey, slander per se is limited to defamatory statements of accusing another person (1) of having committed a criminal offense; (2) of having a loathsome disease; (3) of engaging in conduct or having  a condition that is incompatible with his or her business, trade or office; or (4) of having engaged in serious sexual misconduct. *See Biondi v. Nassimos*, 300 N.J.Super., 148, 154 (App. Div. 1997) (citations omitted). Here, as stated previously, because Plaintiff has not pled any actionable defamatory or slanderous statements, her claim for slander per se is also dismissed.

### 7.   Counts 8, 9, 10, and 11: Conspiracy to Violate Frivolous Litigation Statute, Commit Abuse of Process, Commit Harassment, Commit Intentional Infliction of Emotional Distress

Under New Jersey law, a claim for civil conspiracy cannot survive without a viable underlying tort.  Because all of Plaintiffs' tort claims fail as a matter of law, Plaintiffs' civil conspiracy claims are also correspondingly dismissed.   *See Bankco Popular North America v. Suresh Gandi*, 184 N.J. 161 (2005) (stating that a civil conspiracy claim requires an underlying cause of action); *King's Choice Neckwear, Inc. v. FedEx Corp.,* No. 07–0275, 2007 WL 4554220, at *3 (D.N.J. Dec. 20, 2007) (citation omitted) (stating that "[a] civil conspiracy claim requires an underlying cause of action apart from the conspiracy itself"). Since this Court has dismissed each of the underlying tort claims upon which these conspiracy claims are based, Counts Eight through Eleven of the Complaint are dismissed.

### 8.  Counts 12 and 16: Fraud

Plaintiff next claims that the Firm Defendants committed fraud.  To sustain a fraud claim under New Jersey law, a plaintiff must establish: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Dewey v. Volkswagen AG,* 558 F.Supp.2d 505, 525 (D.N.J. 2008).  Here, Plaintiff has failed to plead with any particularity the misrepresentations she alleges existed in the pleadings that the Firm Defendants submitted to state court.  Further, Plaintiff fails to allege that she relied on those misrepresentations to her detriment.  None of the elements are sufficiently pled, and therefore, Plaintiff's fraud claim is dismissed.[9]

### 9.  Counts 14 and 15: Civil Rights Violations Under the ADA and/or § 1983, New Jersey Law Against Discrimination

Although vague, it appears that Plaintiff's allegations regarding her ADA claims relate wholly to the issue of her hearing impairment during her attendance at court proceedings.  It does not appear that those allegations are asserted against the Firm Defendants. And, Plaintiff does not allege any independent facts that would support a cause of action against the Firm Defendants under the ADA.  As such, the Court dismisses Plaintiff's ADA claim against the Firm Defendants.  For the same reasons, Plaintiff's NJLAD claim, which involves the same allegations as Plaintiff's ADA claim, against the Firm Defendants is dismissed.

---

[9]     It appears that Plaintiff also asserts a negligence claim against the Firm Defendants.  Like all of her claims, Plaintiff fails to allege any of the elements of negligence; rather, Plaintiff simply peppers the Complaint with the word "negligence."  Consequently, there is absolutely no basis for this Court to begin an analysis of a negligence claim.  Suffice to say, that claim is dismissed.

Plaintiff also alleges her civil rights have been violated pursuant to 42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania,* 36 F.3d 1250, 1255–56 (3d Cir. 1994); *Malleus v. George,* 641 F.3d 560, 563 (3d Cir. 2011).

As it is clear from her complaint, any violations of Plaintiff's constitutional rights cannot be attributed to the Firm Defendants as Plaintiff cannot show that the Firm Defendants were acting within the color of state law. Indeed, these private defendants are not public entities or officials subject to the purview of § 1983. Thus, Plaintiff's § 1983 claim is dismissed.

For the aforementioned reasons, Plaintiff's claims against the State and Firm Defendants are dismissed. As noted earlier, *see* FN 2, *supra,* the only remaining claims in the Complaint are against Mr. Fidanzato. Plaintiff shall advise the Court whether she intends to pursue her federal causes of action against Mr. Fidanzato within ten days from the date of the Order accompanying this Opinion.

DATE:  September 28, 2012                    /s/        Freda L. Wolfson
                                             Hon. Freda L. Wolfson
                                             United States District Judge